Dear Representative Jones
¶ 0 This Office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. If an arrestee exercises his right to a bail bondsman whilein county jail, may a county sheriff indicate, select orotherwise recommend a bail bondsman to the arrestee?
 2. Are county sheriffs required to reveal the identity of anarrestee in their custody to a bail bondsman upon request?
 BAIL-AN OVERVIEW
¶ 1 The term "bail" means procuring the release from custody of one charged with an offense. At the same time, it also assures the defendant's future attendance in court. See Manning v. Stateex rel. Williams, 120 P.2d 980, 981 (Okla. 1942).
¶ 2 The framers of the Oklahoma Constitution attached such importance to bail in our system of justice that they included a provision for bail in the Constitution: "All persons shall be bailable by sufficient sureties, except that bail may be denied for. . . ." OKLA. CONST. Article II, Section 8(A). This provision recognizes that bail preserves the presumption of innocence and allows a defendant to be free to prepare his/her defense. SeePetition of Humphrey, 601 P.2d 103, 106 (Okla.Crim. 1979);Stack v. Boyle, 342 U.S. 1, 4(1951).
¶ 3 The Oklahoma Bail Bond Code ("Code") is codified at 59O.S. 1301-59 O.S. 1340 (1991-1998). Section 59 O.S. 1302 confers regulatory authority for bail on the Oklahoma Insurance Commissioner. The Code provides a comprehensive framework to regulate the bail bond profession and the issuance of bail bonds in this state.
 I. LIMITS ON THE SELECTION OF BAIL BONDSMEN BY A SHERIFF
¶ 4 Your first question asks, in effect, whether a sheriff may select or recommend a bondsman on behalf of an arrestee after the arrestee asserts his right to bail. To answer this question, reference must be made to three provisions of the Code.
¶ 5 Title 59 O.S. 1338 (1991) provides:
 Each person arrested shall have an opportunity to use the telephone to call his attorney and bondsman before being placed in jail or within six hours(6) thereafter.
(Emphasis added).
¶ 6 Title 59 O.S. 1320(A) (1998) provides in pertinent part:
 The court clerk of the county shall provide a list of bondsmen permitted to write surety in that county to the judges and law enforcement offices of that county.
(Emphasis added).
¶ 7 "The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute." Jacksonv. Independent School Dist. No. 16 of Payne County, 648 P.2d 26,29 (Okla. 1982). Moreover, provisions in the same statutory scheme should be given a construction which will result in harmonizing the provisions and giving reasonable effect to both sections without doing violence to either. See State ex rel.Porter v. Ferrell, 959 P.2d 576, 578 (Okla. 1998).
¶ 8 The above statutory provisions demonstrate that the Legislature created a system which guarantees an arrestee the opportunity to exercise his/her constitutional right to bail. This is done by first requiring that each arrestee has a statutory right to call a bondsman before being placed in jail, or within six (6) hours of being jailed. See Section 59 O.S.1338. Second, the court clerk of a county must provide all law enforcement officers with a list of licensed bail bondsmen registered in the county. See Section 59 O.S. 1320.
¶ 9 The right to contact a bondsman would become meaningless if an arrestee did not have the names of the bondsmen who are registered in the county to write bail bonds. Once an arrestee is provided the list of bondsmen, the statutory right may be exercised.
¶ 10 The question you raise concerns the selection of a bondsman by law enforcement officials from the list when an arrestee seeks to exercise his right to bail. For example, if an arrestee asks a sheriff to select, indicate or recommend a bondsman for him from the list, may the sheriff accommodate the arrestee in this request? Or, may a sheriff call a bondsman and introduce the bondsman to the arrestee even absent an arrestee's request? To answer these questions we must refer to the Section59 O.S. 1339 of the Code, which guarantees "equal access" to jails to all bondsmen in the state. The provision which guarantees bondsmen equal access to jails reads in pertinent part:
 Every person who holds a valid bail bondsman's license issued by the Insurance Commissioner and registered as required in Section 20 of this act shall be entitled to equal access to the jails of this state for the purpose of making bond. . . .
See 59 O.S. 1339 (1991) (emphasis added).
¶ 11 As previously noted, a fundamental rule of statutory construction is to ascertain the intent of the Legislature. SeeJackson, 648 P.2d at 29. The legislative intent behind this section is to insure that law enforcement officials charged with the care and control of the state's jails provide equal access to the jails to all bondsmen. The question then becomes, "What is equal access?"
¶ 12 The Code does not provide a definition of "equal access." However, "words used in any statute are to be understood in their ordinary sense. . . ." 25 O.S. 1 (1991). The term equal is defined as "of the same measure. . . ." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 420 (9th ed 1985). The term "access" is defined as the "ability to get in." Id. at 49. Section 1339 is intended to guarantee bondsmen the right to enter the jails to write bonds on an equal basis. It is axiomatic that to write bonds a bondsman must have access to arrestees. Thus, equal access does not refer only to open jail doors, but access to those who seek bail bonds.
¶ 13 Unequal access to arrestees may arise several ways. For example, a bondsman may be a relative or good friend of the sheriff or the bondsman may have supported the sheriff for election. In either situation the favored bondsman would maintain an unfair advantage over the less favored bondsmen. If a sheriff were free to call or otherwise select a favored bondsman, the equal access statute would not be observed even though the arrestee successfully obtained bail. A statute should be given a sensible construction bearing in mind the evils intended to be avoided. See AMF Tubescope v. Hatchel, 547 P.2d 374, 379 (Okla. 1976).
¶ 14 The legislative disfavor for this type of conduct is further demonstrated in the Code provision that precludes a bondsman from "paying a fee or rebate, or giving or promising anything of value to a jailer, trustee, police officer, law enforcement officer, or other officer of the law, or any other person who has power to arrest or hold in custody. . . ." to secure a delay or advantage. 59 O.S. 1310(A)(15) (1998). By including this provision, the legislature has expressed intent that the selection process be free from real or perceived irregularities and that bondsmen be selected without interference from jailers or sheriffs. If a sheriff is free to either select or otherwise recommend a bondsman on the arrestee's behalf, then equal access quickly loses its meaning. Case law holds that legislation should not be interpreted in such a way as to render it nugatory. See In re Supreme Court Adjudication,597 P.2d 1208, 1210 (Okla. 1979).
¶ 15 To avoid this conflict and to insure that Section 1339 addresses the evils it was intended to remedy, a sheriff must provide a list of licensed bondsmen to an arrestee when the arrestee requests a bondsman and permit the arrestee to call a bondsman. To give effect to the idea of equal access, a sheriff must be removed from the selection process.
¶ 16 To remove a sheriff from the process, he/she may maintain a rotating list of bondsmen to be used when an arrestee requests a bondsman and is unable, for some reason, to select one. The sheriff may, under such circumstances, refer to the rotating list and provide the arrestee with the next name on the list. Under this circumstance, the sheriff is not making the selection; he/she is merely providing the name that next appears on the rotating list. The determination of the name selected is not made by the sheriff.
¶ 17 In summary, in order to give effect to all relevant provisions of the Code, a sheriff may not select, recommend, or otherwise indicate a bondsman to an arrestee even if permission is given by an arrestee. Such a procedure would render nugatory the equal access provision of the code, a result not permissible by the applicable rules of statutory construction.
 II. BAIL BONDSMEN-ACCESS TO ARRESTEE INFORMATION
¶ 18 Your second question asks whether a county sheriff must reveal the identity of an individual in his/her custody to a bail bondsman. As previously noted, the right to bail is a constitutional right afforded an arrestee. See OKLA. CONST., Article II, Section 8. In order for this right to be preserved, the arrestee must have access to a bail bondsman. Likewise, bail bondsmen must have access to arrestees. The Legislature recognized the need for mutual access and thereby provided arrestees with the right to call a bondsman when jailed, or within six (6) hours thereafter. See 59 O.S. 1338 (1991).
¶ 19 However, the situation may arise wherein an arrestee prefers to contact a relative or friend who would then contact a bondsman on his behalf. The bondsman would then contact the sheriff and request certain information concerning the arrestee. This information, once acquired, would be used by the bondsman to procure the release of the arrestee. It is therefore crucial that the bondsman have access to the arrest information. The Legislature recognized the importance of this information and created a duty for a sheriff to maintain a jail registry which lists, among other things, the name, description and nature of the arrest for all arrestees. See 57 O.S. 48 (1998). Failure of a sheriff to provide this information to a bondsman would indirectly result in the deprivation of the constitutional right to bail because a bondsman would be unable to secure the necessary information from the sheriff to execute a bond.
¶ 20 Moreover, a jail registry is an open record under the Oklahoma Open Records Act, mandating its release upon request. The Open Records Act requires the release of arrestee information to the public as follows:
 A. Law enforcement agencies shall make available for public inspection, if kept, the following records:
 1. An arrestee description, including the name, date of birth, address, race, sex, physical description, and occupation of the arrestee;
. . . .
 8. Jail registers, including jail blotter data or jail booking information recorded on persons at the time of incarceration showing the name of each prisoner with the date and cause of his commitment. . . ."
51 O.S. 24A.8(A) (1991) (emphasis added).
¶ 21 County sheriffs are law enforcement agencies for the purpose of Section 24.A.8. See 51 O.S. 24A.3(5) (1998). As Section 57 O.S. 48 of Title 57 creates a statutory duty for a sheriff to keep a jail register, this document must be kept. Once kept, the document becomes a public record and must be made available to the general public, including bondsmen.
¶ 22 It is, therefore, the Official Opinion of the AttorneyGeneral that:
 1. A sheriff may not select, recommend, or otherwise indicatea bondsman to an arrestee even if given permission by anarrestee, since such action would violate the "equal access"provision of the Oklahoma Bail Bond Code. See 59 O.S. 1339(1991).
 2. To insure protection afforded arrestees in this state underArticle II, Section 8 of the Oklahoma Constitution and theOklahoma Bail Bond Code, 59 O.S. 1301-59 O.S. 1340, acounty sheriff must provide arrestee information aboutindividuals in his custody to bail bondsmen.
 In addition, 57 O.S. 48 (1998) requires county sheriffs tomaintain jail registers. These registers are open recordspursuant to the Oklahoma Open Records Act, 51 O.S.24A.8(A)(1), 51 O.S. 24A.8(A)(8), and must be released tothe public, including bail bondsmen, upon request.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOSEPH L. McCORMICK IV ASSISTANT ATTORNEY GENERAL